# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### CLEVELAND DIVISION

| | | |
|---|---|---|
| **KELLY MCNAMARA,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **SUNFLOWER LTD., and** | ) | |
| **SUNFLOWER TECHNOLOGY,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## STATEWIDE CLASS ACTION COMPLAINT

Plaintiff Kelly McNamara, an adult resident of Cuyahoga County, Ohio, on her own behalf and on behalf of all others similarly situated in the state of Ohio, files this state-wide class action complaint against Sunflower Ltd. and Sunflower Technology, Inc. (collectively, "Sunflower" or "Defendants").

## INTRODUCTION

1.     This state-wide class action seeks recovery of illegal gambling losses by Ohio residents who played Sunflower's illegal online gambling games. Plaintiff seeks, on her own behalf and on behalf of all similarly situated Ohio residents,

(1) a declaratory judgment that Sunflower's games violate federal law, and that Sunflower's online terms of service set out the terms and conditions under which the illegal gambling is conducted are therefore unenforceable in a federal court;

(2) a declaratory judgment that the online terms of service and the arbitration provision contained in the terms of service are each void as violative of Ohio law;

(3) recovery under the Ohio gambling loss recovery act, ORC § 3763.02;

(4) recovery under the Ohio Consumer Sales Practices Act; and

(5) restitution for unjust enrichment.

Plaintiff also seeks on her own behalf losses of Ohio residents pursuant to ORC § 3763.04 which are not recoverable by class members.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Kelly McNamara is an adult resident citizen of Cuyahoga County, Ohio. She played the illegal gambling games described below in this district and division.

3. Defendants Sunflower, Ltd. and Sunflower Technology, Inc. are foreign corporations organized under the laws of Israel, with its principal place of business in Tel Aviv-Jaffa Israel. Each does business through online games in most of the states in the United States, including in this district and division. Neither of the defendants have a physical place of business in Ohio.

4. The events giving rise to plaintiff's claims occurred in this district and division, such that venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2).

5. Plaintiff, the plaintiff class, and defendants are citizens of different States and foreign states, and the aggregated amount in controversy in this class

2

action exceeds $ 5 million, exclusive of interest and costs. This Court therefore has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

6.     Plaintiff also brings an individual claim with more than $75,000 at issue under ORC § 3763.04. Thus, the Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.     This Court has personal jurisdiction over Sunflower because the company has sufficient minimum contacts to support specific personal jurisdiction in the state, and those contacts are directly related to Plaintiff's claims. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

8.     Sunflower's minimum contacts with the state of Ohio include ongoing contractual relationships created by the terms and conditions on the Defendants' websites, which include Crown Coins Casino and iCasino. Sunflower required Plaintiff and all other Ohio customers to agree to these terms. Both the Sixth Circuit and the United States Supreme Court, among many others, have found that personal jurisdiction is proper "where a defendant 'has created continuing obligations between himself and the residents of the forum." Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 551 (6th Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

9.     Sunflower's contacts with Ohio also include direct solicitations and other communications, instituted by the company, with customers in Ohio. These

include in-game messages and advertisements sent to players. Further, social and sweeps casino companies specifically target individuals who spend money on the apps, including by sending them direct, targeted advertisements to play the game, purchase coins, or participate in particular features of the games. See "How social casinos leverage Facebook user data to target vulnerable gamblers," PBS News Hour, available at https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers (last accessed July 11, 2025). These communications and advertisements specifically directed by Sunflower to particular current and prospective players in Ohio constitute purposeful contacts with the state.

## RELEVANT FACTS

**A.    Defendants' Gambling Games.**

10.    Sunflower is a game developer that has created games that simulate slot machines and other gambling games, including Crown Coins Casino and iCasino, which it makes available to the public on the websites www.crowncoinscasino.com and icasino.com.

11.    Sunflower's games operate with two forms of virtual currency. Both are typically purchased together in packages by players. The first is called "crown coins." Crown coins when won cannot be redeemed for real-world currency. However, when users play with crown coins and win more crown coins, the crown

4

coins won can be used to extend their playing time without having to purchase more coins, and thus they obtain more amusement, a valuable consideration under Ohio gambling law. O.R.C. § 2915.02(A)(2); <u>Westerhaus Co. v. City of Cincinnati</u>, 135 N.E. 2d 318, 336 (Ohio 1956).

12.     The other virtual coins used by Sunflower's websites are called Sweeps Coins. Sunflower maintains that Sweeps Coins cannot be purchased. However, when individuals purchase packages of crown coins, they are "given" a set number of Sweeps Coins. Sweeps Coins can be redeemed for real-world currency. Thus, when customers play with them, they are gambling real money, whether Sunflower describes it this way or not.



13.     Sunflower's games are games of chance. They are available online through its websites, Crown Coins Casino and iCasino, to the public in Ohio through the websites www.crowncasino.com and www.icasino.com.  Here is an example of one of defendants' games:



14.     Plaintiff Kelly McNamara spent money on packages including crown coins and sweeps coins, played Sunflower's gambling games, and lost money on the games within the six months preceding the filing of this complaint.

6

**B.**   **Defendants' Games Have Gravely Harmed the Class and the State of Ohio.**

15.   The social ills caused by "social casino" and "sweeps casino" games are well-documented. Media reports how gambling addicts spend enormous, and completely unaffordable, amounts of money on these casino games. One nurse in Houston is reported to play a slot machine game similar to defendants' here for a minimum of two hours a day. (Ex. 1, https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on Aug. 19, 2024)).  Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (Id.). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps spinning Reel Rivals at the same time. We normalize it with each other." (Id.). This is not an isolated instance.

16.   NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's aggressive marketing tactics. "Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find

out about their behavior." (Id.). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendants'] while working as an addiction counselor. 'The whole time I was working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said." Such problems are only exacerbated by "sweeps casinos," where users have access to gambling games where they can win cash money, and not just additional play-time, twenty-four hours a day, seven days a week.

17.    Anecdotal reports of gambling addictions in connection with social casino and sweeps casino games like defendants' are buttressed by recent scientific studies that confirm that such apps not only appeal to gambling addicts, but have a particular appeal to teenagers. One of the more troubling statistics comes from studies that show that 30% of users of these games between the ages of 12 and 18 later become regular gamblers. Hollingshead, et al., "Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction?" 46 Journal of Gambling Issues 43 (2021).

18.    Companies in the social casino and sweeps casino industry, including Defendants, have extracted tens of millions of dollars from Ohio's economy in the last five years, all without adding anything to the economy of the state or paying a dime in taxes to Ohio's treasury. Instead, the money extracted from Ohio's economy

ends up in not only in Defendants' home country of Israel, but also in places like Hong Kong, Gibraltar, Australia, and Cyprus, where other major companies in the industry are headquartered. According to research on the industry as a whole, social casinos and sweeps casinos had estimated 2024 revenues of 7.1 billion and 10.6 billion, respectively. https://kpmg.com/kpmg-us/content/dam/kpmg/pdf/2025/sweepstakes-gaming-emerging-industry-primer.pdf. Revenue in the sweeps casino segment has been growing at a rapid pace, with projections of 2025 gross revenues above $14 billion and net revenues of almost $5 billion. Id. Even if Ohio consumers represent but a small percentage of that total, the reality is that a great deal of money is being siphoned from the state's economy each year.

## CLASS ALLEGATIONS

19.     Plaintiff seeks to certify and represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class sought to be certified is defined as follows:

> All Ohio residents who spent money on Sunflower's websites (www.crowncoinscasino.com and icasino.com) within the applicable statute of limitations for each of the class claims set forth below and continuing to a date to be set by the Court following certification. All employees of the Court and plaintiff's counsel, and their families, are excluded.

20.    This class action satisfies the numerosity requirement of Rule 23(a)(1) because joinder of all members of the plaintiff class is impracticable. There are thousands of Ohio residents who are members of the class.

21.    This class also satisfies the commonality requirement of Rule 23(a)(2) because there are central questions of fact and law that are common to the class. Such common questions include, at a minimum, (a) whether Sunflower's games are games of chance; (b) whether free play is a thing of value under Ohio law; (c) whether individuals playing with sweeps coins can recover real money; (d) whether Sunflower's games constitute illegal gambling under Ohio law; (e) whether class members are entitled to recover their losses pursuant to Section 3763.02 of the Ohio Revised Code; (f) whether Sunflower represented on its website or in advertisements that its gambling games do not constitute "real money gambling;" (g) whether Sunflower represented on its website or in advertisements that its gambling games are legal in Ohio; (h) whether these misrepresentations constitute deceptive trade practices under Ohio law; (i) whether Sunflower was unjustly enriched by its illegal activities; (j) whether Sunflower's terms of service are unenforceable under federal law because they set forth the terms and conditions under which illegal gambling under federal law occurs; and (k) whether Sunflower's terms of service, and the arbitration agreement contained therein, are each void under Ohio law.

22.     The proposed class satisfies the typicality requirement of Rule 23(a)(3) because the named plaintiff's claims are typical of the claims of the class members. Both plaintiff and the class members lost money in an effort to win either money (with sweeps coins) or additional playing time and amusement (with crown coins) on these illegal gambling games.

23.     The named plaintiff will fairly and adequately represent the interests of the class pursuant to Rule 23(a)(4). Plaintiff has no interests that conflict with the interests of the class. Furthermore, plaintiff has retained competent and experienced counsel with decades of experience litigating class cases.

24.     Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows class treatment of a claim where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

11

25.     The common questions of law and fact in this case vastly predominate over any individual issues affecting only individual class members. The ***only*** individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed, the individual damages issues can be quickly and accurately resolved by examining Sunflower's own records.

26.     Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all.

27.     For this reason, none of the class members have any interest in controlling the prosecution of separate actions. Likewise, to our knowledge, no class member has commenced a pending action concerning this controversy.

28.     It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

29.     Plaintiff's counsel foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the

individual class members is contained in Sunflower's own records concerning users'

purchases and in the records of the platforms that facilitate the service. Defendants

and the platforms they use to provide the games keep extensive records which will

demonstrate not only the aggregate amounts lost by players in Ohio, but the identities

of the individual players and the amounts of their individual losses. This information

is easily ascertainable in discovery.

## SUNFLOWER'S GAMES VIOLATE OHIO AND FEDERAL LAW

30.    Unregulated gambling is illegal in Ohio, and there is a strong public

policy against unregulated gambling in this state. The state's strong public policy

against gambling includes a statutory right of persons who lose money or other

things of value on illegal gambling to recover their money or thing of value.

31.    The Ohio criminal laws pertaining to gambling are codified in Chapter

2915 of the Ohio Revised Code. Ohio law prohibits gambling on both "schemes of

chance" and "games of chance." Each of these is defined in the code:

> "Scheme of chance" means a slot machine unless authorized under
> Chapter 3772. of the Revised Code, lottery unless authorized under
> Chapter 3770. of the Revised Code, numbers game, pool conducted for
> profit, or other scheme in which a participant gives a valuable
> consideration for a chance to win a prize, but does not include bingo, a
> skill-based amusement machine or a pool not conducted for profit.
> "Scheme of chance" includes the use of an electronic device to reveal
> the results of a game entry if valuable consideration is deemed to be
> paid for a chance to win a prize in the following instances:
>
> (7) A participant may purchase additional game entries by using points
> or credits won as prizes while using the electronic device.

13

O.R.C. § 2915.01(C)(7).

> (D) "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

O.R.C. § 2915.01(D)

32.     The Ohio Revised Code also defines "gambling device" to include "(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance." O.R.C. § 2915.01(F)(3). Sunflower's games are nothing more than slot machines, and the outcome of each wager is determined "largely by chance," and so Sunflower's games are both "games of chance" and a "gambling device" within the meaning of Ohio law.

33.     Valuable consideration within the meaning of O.R.C. § 2915.01(C)(7) is not limited to a situation where one gambles in the hopes of winning actual cash money. Rather, "valuable consideration" specifically includes "additional game entries by using points or credits won as prizes while using the electronic device." O.R.C. 2915.02(A)(2). Further, the Ohio Supreme Court has held that "[a]musement is a thing of value" and thus that risking something one purchased to obtain additional amusement is gambling as a matter of law. Westerhaus Co. v. City of Cincinnati, 135 N.E. 2d 318, 336 (Ohio 1956) ("Amusement is a thing of value. Were it not so, it would not be commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives.").

14

34.     Because the gambling games are illegal in Ohio, when such games are played in Ohio, they are also illegal under federal law pursuant to 18 U.S.C. § 1955, as more fully set forth in Count One below.

## CLAIMS FOR RELIEF

## COUNT ONE: DECLARATORY ACTION THAT THE GAMBLING IS ILLEGAL UNDER FEDERAL LAW, MAKING DEFENDANTS' TERMS OF SERVICE UNENFORCEABLE IN FEDERAL COURT

35.     Plaintiff incorporates the factual and legal averments of Paragraphs 2-34 by reference as if fully set forth in this count.

36.     Plaintiff seeks, on behalf of herself and the class, a declaratory judgment that:

> a. Sunflower's conduct in Ohio is an "illegal gambling business" under 18 U.S.C. § 1955;
>
> b. The "Terms of Service" found on Sunflower's websites (www.crowncoinscasino.com and icasino.com) set out the terms and conditions under which Sunflower's illegal gambling is conducted; and
>
> c.     The Terms of Service are unenforceable in federal court.

37.     The relevant language of 18 U.S.C. Section 1955 states:

> **(1)** "illegal gambling business" means a gambling business which—
>
> > **(i)** is a violation of the law of a State or political subdivision in which it is conducted;
> >
> > **(ii)** involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

15

**(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

28 U.S.C. § 1955(b)(1).

38.     As to the first element required to find an illegal gambling business, under section 1955, Sunflower's games, as played with both crown coins and sweeps coins, are in fact illegal gambling under Ohio law.

39.     As explained above, Ohio law bans both games of chance and schemes of chance, and Sunflower's games fit this definition. See ¶ 18, supra.

40.     Notwithstanding Sunflower's misrepresentation to the contrary, when played with sweeps coins, Sunflower's games constitute real money gambling because users can get sweeps coins by spending real money, can risk those sweeps coins on games or schemes of chance to try to win more, and can redeem their sweeps coins for cash.

41.     Sunflower's games also constitute illegal gambling when played with crown coins, because, notwithstanding Sunflower's misrepresentation to the contrary, they are redeemable for continued or additional amusement. The Ohio Supreme Court has made it abundantly clear that this constitutes illegal gambling. See Westerhaus Co. v. City of Cincinnati, 165 Oh. St. 327, 336; 135 N.E.2d 318 (Ohio 1956) ("Amusement is a thing of value. Were it not so, it would not be

commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives.").

42.     As to the second element under Section 1955, Sunflower certainly employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.

43.     The third element of Section 1955 is also met. Sunflower has both been in business for more than 30 days in Ohio, and has had gross revenue of more than $2000 in a single day. Sunflower has conducted business in Ohio for multiple years, and, upon information and belief, has collected gross revenue of more than $2000 in a single day on multiple occasions.

44.     Because all three elements of Section 1955 are met, Sunflower's conduct in Ohio constitutes an illegal gambling business, and Claimant's first request for declaratory judgment is due to be granted.

45.     The second request for declaratory judgment should also be granted. The "Terms of Service" found on Sunflower's websites, do in fact set out the terms and conditions under which the illegal gambling thereon is conducted. Plaintiff expects Sunflower will challenge the words "illegal" and "gambling" in this request, but will likely not dispute the fact that its terms and conditions govern the operation of the games and all of the activity it conducts in Ohio.

17

46.    Because the contract, as described above, is illegal pursuant to federal law, namely 18 U.S.C. § 1955, federal courts, pursuant to United States Supreme Court precedent, are not permitted to enforce the contract in aid of such illegal activity. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 84 (1982), which held:

> It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power."

(quoting Hurd v. Hodge, 334 U.S. 24, 34-35 (1948)).

## COUNT TWO: DECLARATORY JUDGMENT THAT DEFENDANTS' TERMS OF SERVICE AS A WHOLE AND THE ARBITRATION PROVISION ITSELF ARE EACH VOID UNDER OHIO LAW

47.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-46 by reference as if fully set forth in this count.

48.    As set forth above, defendants' games are governed by terms of service that facilitate the illegal gambling. The terms of service are therefore void pursuant to Section 3763.01 of the Ohio Revised Code, which states that "[a]ll promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of

money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void."

49. Sunflower's terms and conditions also contain provisions within the arbitration agreement that exist in aid of the illegal gambling conduct, and are thus void and unenforceable. For example, the terms attempt to prevent Sunflower's customers from both arbitrating or litigating any dispute concerning the losses of third parties. All claims pursuant to Section 3763.04 concern the losses of third parties, thus this provision attempts to exculpate Sunflower from the clear consequences of its intentional illegal activity in Ohio. See icasino.com/terms-of-service at 13.9(e); crowncoinscasino.com/pages/terms-of-service at 13.9(e).

50. Plaintiff seeks, on her own behalf and on behalf of the class, a declaration that Sunflower's terms of service, and, separately, the arbitration agreement contained therein, are each void under Ohio law.

**COUNT THREE: CLASS CLAIMS FOR INDIVIDUAL LOSSES**

51. Plaintiff incorporates the factual and legal averments of Paragraphs 2-50 by reference as if fully set forth in this count.

52. The Ohio Revised Code provides a statutory civil cause of action to recover money paid and lost due to gambling. Section 3763.02 provides:

> If a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and

recover such money or thing of value or part thereof, from the winner, thereof with costs of suit.

O.R.C. § 3763.02.

53. On behalf of herself and all others similarly situated, Kelly McNamara seeks for each class member recovery of the amount paid through purchases on Sunflower's websites within the six months preceding the filing of this complaint minus any amounts that player was actually paid back as a result of winnings, pursuant to Section 3763.02 of the Ohio Revised Code.

## COUNT FOUR: INDIVIDUAL CLAIM FOR THIRD PARTY LOSSES

54. Plaintiff incorporates the factual and legal averments of Paragraphs 2-53 by reference as if fully set forth in this count.

55. After the six-month period during which the losing gambler may recover his or her money, the Ohio Revised Code provides that any person may then sue and recover the losses:

> If a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit.

O.R.C. § 3763.04

56. Pursuant to Section 3763.04 of the Ohio Revised Statutes, Kelly McNamara claims, on her own behalf, the total of the net losses by purchasers of

20

virtual currency on Sunflower's websites that occurred more than six months prior to the filing of this complaint that are not, for any reason, recoverable by the class pursuant to counts five and six.

### COUNT FIVE: CLASS CLAIMS FOR VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

57.    Plaintiff incorporates the factual and legal averments of Paragraphs 2-56 by reference as if fully set forth in this count.

58.    The Ohio Consumer Sales Practices Act, codified in Chapter 1345 of the Ohio Revised Code, forbids companies offering goods or services to the public in the state from committing any "unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02(A).

59.    In addition to this general bar on deceptive acts and practices, the statute goes on to expressly forbid a non-exclusive list of representations, including the following:

(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not:
O.R.C. § 1345.02(B)

60.    Sunflower expressly represents on its website that "only Crown Coins, and no other virtual currency, may be purchased via the Platform." Despite this representation, Sunflower offers specific amounts of sweeps coins with each

21

purchase of crown coins, and its customers are clearly purchasing the sweeps coins as well.



61.    Sunflower's insistence that the Sweeps Coins are not available for purchase, like its representation that playing with them is not real money gambling, is patently false.

62.    Sunflower's misrepresentation that sweeps coins have no value violates the Ohio Consumer Sales Practices Act because it is deceptive to consumers, and because it is a representation that a good or service has characteristics or standards that it does not have.

22

63.     Sunflower also represents that no purchase is necessary to play the games and that "[p]urchasing Crown coins does not extend Game play time." However, when a user runs out of crown coins, or their balance goes below the smallest spin amount for the slot machine they are playing, Sunflower's website will not allow them to continue, as these screens demonstrate:



64.     When these screens were reached, the games were set on the lowest spins available in that particular game. Sunflower will likely claim that it is possible to get more coins for free at that point, but it is not immediately obvious to the player how to do so.[1] When a player sees this screen, one option left to her is to find a game

---

[1] It appears that it is only when the player spins her crown coins to precisely zero, which may not be possible on a given game based on what the minimum bet is, that Sunflower's websites provide additional crown coins for free. If the player is playing with sweeps coins, none are provided for free, and she must switch to crown coins to continue playing.

with a lower minimum spin value, which obviously takes time and takes away from the player's amusement. The home screen of the website does not show what the minimum spin value is for a particular game.

65.     Another option is for the player to purchase additional crown coins, which will allow her to continue playing. It is clear that this purchase of crown coins extends playing time and provides additional amusement. Thus, Sunflower's representation on its website that buying the coins does not extend playing time is false and deceptive.

66.     Similar misrepresentations are made in the Terms of Service for Sunflower's other website, iCasino.com, including the misrepresentation that the virtual coins available for purchase thereon have no value. Under Ohio law, the purchase of such coins increases and extends the amusement of the player, which is a thing of value. Westerhaus, 135 N.E. 2d at 336.

67.     The Ohio Consumer Sales Practices Act provides a private right of action, allowing consumers to recover money lost to deceptive practices.

68.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adopting the class allegations found in Paragraphs 23-33 above, Plaintiff seeks to recover for the class all money lost by a class of persons who played Sunflower's illegal gambling games during the two-year statute of limitations of the Consumer Sales Practices Act.

24

## COUNT SIX: UNJUST ENRICHMENT

69.     Plaintiff incorporates the factual and legal averments of Paragraphs 2-64 by reference as if fully set forth in this count.

70.     The elements of unjust enrichment in Ohio are "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of such benefit; and (3) the defendant retained benefit under [unjust] circumstances." Compound Property Management, LLC v. Build Realty, Inc., 343 F.R.D. 378, 412 (S.D. Ohio 2023) (quoting Anderson, Inc. v. Consol, Inc., 458 F.3d 496, 501 (6th Cir. 2003)).

71.     Here the first two elements are obvious and will likely be undisputed. Defendants retained a benefit when Plaintiff and the class purchased Crown Coins and Sweeps Coins from it, and it knew of the existence of their purchases.

72.     Because the only purpose of the virtual coins being purchased is to gamble with them on Defendants' illegal gambling games, Defendants' retention of the monies paid in these illegal games constitute unjust circumstances. Thus, the elements of unjust enrichment are met, and the funds that were illegally obtained should be returned to class members.

73.     "A six-year statute of limitations applies to unjust enrichment claims in Ohio." Radon Service Agreement Corp. v. Radon Service Agreement, Inc., 2005 WL 2086010 at *2 (S.D. Ohio 2005) (citing Drozeck v. Lawyer's Title Ins. Corp., 749 N.E. 2d 775, 823 (Ohio Ct. App. 2000).

74.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adopting the class allegations found in Paragraphs 23-33 above, Plaintiff seeks to recover all money lost by a class of persons who played Sunflower's illegal gambling games during the six years preceding the filing of the complaint.

## NOTE ON ARBITRATION

75.    Plaintiff Kelly McNamara and the members of the class are subject to arbitration agreements which Sunflower requires all of its users to agree to.

76.    The arbitration agreements are found in the Terms of Use on Sunflower's websites, Crown Coins Casino and iCasino.

77.    It is for an arbitrator to determine whether these Terms and Conditions constitute an illegal contract that is void and unenforceable under Ohio and federal law. See O.R.C. § 3763.01 ("All promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void."); see also Count One, ¶¶ 34-44.

78.     The United States Supreme Court has made it clear that the determination of illegality of a contract containing an arbitration clause is for the arbitrator in the first instance. See, e.g., Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446 (2006).

79.     The Supreme Court has also held that federal courts must stay, rather than dismiss, when a party requests a stay pending arbitration. Smith v. Spizzirri, 601 U.S. 472, 474 (2024) (noting that Section 3 of the Federal Arbitration Act does not "permit[] a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration.")

80.     Plaintiff intends to file a motion to stay pending the outcome of that arbitration. Under Smith v. Spizzirri, this motion is due to be granted.

## PRAYER FOR RELIEF

Pursuant to the legal and factual averments above, Plaintiff respectfully asks this court to:

1.  Take jurisdiction of this cause;

2.  Grant plaintiff's motion to stay the case pending the outcome of arbitration;

3.  Following arbitration and discovery, certify counts one, two, three, five, and six of this complaint as a class action pursuant to Rule 23(b)(3);

27

4. Appoint the undersigned as Class Counsel and the named plaintiff as class representative;

5. Enter a final judgment against Sunflower awarding plaintiff and the class members a refund of their net losses on Sunflower's illegal gambling games in the period between six months prior to the filing of the complaint and the entry of judgment under Ohio's gambling loss recovery statute;

6. Enter a final judgment against Sunflower awarding plaintiff and the class members a refund of their losses, unrecovered under count three, during the period between two years prior to the filing of the complaint and the entry of judgment, pursuant to the Ohio Consumer Sales Practices Act;

7. Enter a final judgment against Sunflower awarding plaintiff and the class members restitution of all amounts unrecovered under counts three and five, by which Sunflower was unjustly enriched during the period between six years prior to the filing of the complaint and the entry of judgment;

8. Enter a final judgment against Sunflower awarding to plaintiff the amount of all money lost in Sunflower's illegal gambling games by Ohio residents during the period between one year prior to the filing of the complaint and six months prior to the filing of the complaint, to the extent that such losses have not been recovered under counts two, four, and five;

9. Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgement in favor of the class;

10. Award the named plaintiff a reasonable sum of money for her services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;

11. Award interest and costs; and

12. Award any other relief to which the Court finds plaintiff and the class are entitled.

Respectfully submitted this 22nd day of August, 2025

ROCKWELL LLC

*/s/ Joshua D. Rockwell*
Joshua D. Rockwell (0081107)
47 East Wilson Bridge Road
Worthington, Ohio 43085
PH: (614) 315-1970
jrockwell@lawrockwell.com
*Trial Attorney for Plaintiff*

*Counsel Seeking Pro Hac Vice*
Dargan M. Ware (*pro hac vice* anticipated)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com